1                                  HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| METROPOLITAN PROPERTY<br>CASUALTY INSURANCE COMPANY,<br><br>                Plaintiff,<br><br>      v.<br><br>KENNETH VICTOR NIETO; KAREN<br>ROBINSON-NIETO; JOSH<br>PEMBERTON; TRAVIS EDWARD<br>NELSON; TIFFANY SAPEL, and BBP<br>II, INC., d/b/a HOB NOB<br>RESTAURANT,<br><br>             Defendants. | CASE NO. 13-5805 RBL<br><br>ORDER GRANTING PLAINTIFF'S<br>MOTION FOR SUMMARY<br>JUDGMENT |
| --- | --- |

THIS MATTER comes before the Court on Plaintiff Metropolitan Property Casualty Insurance Company's Motion for Summary Judgment. MetLife seeks judgment as a matter of law that its homeowners' insurance policy does not require it to defend or indemnify its insureds, Defendants Kenneth and Karen Nieto, from Defendant Josh Pemberton's claims against them.

The underlying complaint arises out of a bar fight at the Hob Nob restaurant during which Kenneth Nieto bit off a portion of Josh Pemberton's nose. Pemberton sued Kenneth Nieto

and his wife, Karen, the Hob Nob's owner, BBP II, Inc., and the bartender, Travis Nelson, for negligence. Pemberton claims that the negligence of all Defendants caused his injury.

The Nietos tendered the defense of the claim to MetLife under their homeowners' policy, and MetLife brought this declaratory judgment action seeking a determination that it had no duty to defend or indemnify the Nietos from claims arising from intentional acts.

## I.  Background

### A.  Facts

The fight started as a minor encounter between the Nietos and Josh Pemberton and his then-girlfriend, Defendant Tiffany Sapel, in the bar area of the Hob Nob Restaurant. Travis Nelson was tending bar. Karen Nieto left to use the restroom, and Sapel pretended to "borrow" a cigarette out of Ms. Nieto's purse. Nelson warned Sapel that Ms. Nieto was hot-tempered and would likely get angry or violent if she stole a cigarette, so Sapel refrained. When Ms. Nieto returned, Nelson told her what Sapel had nearly done.

Ms. Nieto started a fight with Sapel, which escalated to Ms. Nieto pinning her to the floor and punching her with closed fists. Pemberton tried to help Sapel by attempting to pull Ms. Nieto off of her. Mr. Nieto then got involved in the struggle. Pemberton and Mr. Nieto were rolling around on the floor when Mr. Nieto wrapped his arms around Pemberton. Pemberton then began head-butting Mr. Nieto in the lip, at which point Mr. Nieto bit down, severing a portion of Pemberton's nose.

Pemberton sued the Nietos, the bar, and the bartender in state court.  He claimed that both of the Nietos were negligent:  Karen Nieto was negligent in reacting violently and without provocation, in instigating a fight, and in assaulting Sapel and Pemberton; and Kenneth Nieto was negligent in reacting violently to Pemberton's attempts to stop the fight, in fighting with

1   Pemberton, and in inflicting severe bodily injury upon Pemberton. Kenneth Nieto was convicted

2   of third degree assault.

3          MetLife seeks a declaratory judgment as a matter of law that its policy does not require it

4   to defend or indemnify the Nietos for their intentional and criminal acts.  Defendants Sapel and

5   Nieto failed to respond to this federal action against them and are in default. The remaining

6   defendants in this action (Pemberton,  Nelson, and BBP II) oppose the motion, arguing that the

7   Nietos' acts were  not intentional, or were a reasonable use of protective force (self defense), and

8   not excluded from the policy's coverage. BBP II also suggests that the Nietos may have been too

9   intoxicated to form an intent to act.

10      **B.      The Policy**

11         The Nieto's homeowner's policy obligates MetLife to defend its them for any occurrence

12  within the policy's coverage:

13         COVERAGE F – PERSONAL LIABILITY

14         **Agreement.** *We will pay* all sums for bodily injury and property *damage* to others for
           which the law holds you responsible *because of an occurrence* to which this coverage
15         applies. This includes prejudgment interest awarded against you.

16         *We will defend you*, at our expense with counsel of our choice, against any suit seeking
           these damages. We may investigate, negotiate, or settle any suit. We are not obligated to
17         defend any claim or suit seeking damages not covered under this policy.

18  [Vacha Dec., Dkt. #37, Ex. B (emphasis added)]

19         The policy defines "occurrence" as "an accident, including continuous or repeated

20  exposure to substantially the same general harmful conditions during the term of the policy."

21         The policy expressly excludes coverage for claims arising from intentional acts:

22

23

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 3

SECTION II – LOSSES WE DO NOT COVER

1. **Intentional Loss**. We *do not cover* bodily injury or property damage which is reasonably expected or intended by you or *which is the result of your intentional and criminal acts* or omissions. This exclusion is applicable *even if*:

   a. You lack *the mental capacity* to govern your conduct;
   b. Such bodily injury…is of a different kind or degree than reasonably expected or intended by you; or
   c. Such bodily injury…is sustained by a different person than expected or intended by you.

This exclusion applies regardless of whether you are actually charged with or convicted of a crime. However, this exclusion does not apply to bodily injury or property damage resulting from the use of *reasonable force by you to protect persons* or property.

[Vacha Dec., Ex. B, Dkt. #37 (emphasis added)]

Pemberton, BBP II, and Nelson claim that under this language, MetLife had a duty to defend and indemnify the Nietos for their allegedly negligent acts. MetLife argues that it had no such duty as a matter of law because its policy explicitly excludes coverage for intentional acts.

## II.    Discussion

### A.    Summary Judgment Standard

Summary judgment is appropriate when, viewing the facts in the light most favorable to the nonmoving party, there is no genuine issue of material fact which would preclude summary judgment as a matter of law.  Once the moving party has satisfied its burden, it is entitled to summary judgment if the non-moving party fails to present, by affidavits, depositions, answers to interrogatories, or admissions on file, "specific facts showing that there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient." *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Factual disputes whose resolution would not

1  affect the outcome of the suit are irrelevant to the consideration of a motion for summary

2  judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  In other words,

3  "summary judgment should be granted where the nonmoving party fails to offer evidence from

4  which a reasonable [fact finder] could return a [decision] in its favor." *Triton Energy*, 68 F.3d at

5  1220.

6  **B.    Insurance Policy Interpretation**

7  The interpretation of an insurance policy is a question of law.  *Overton v. Consolidated*

8  *Ins.,* 145 Wn.2d 417, 423 (2002).  Insurance policies are contracts which are construed as a

9  whole with the terms interpreted in the way that an average insurance buyer would understand.

10  *Id*.  If the language is clear and unambiguous, the court must enforce it as written and may not

11  create ambiguity where none exists.  *Am. Nat'l Fire Ins. v. B&L Trucking & Constr. Co*., 134

12  Wn.2d 413, 419 (1998).

13  Courts engage in a two step process to determine whether insurance coverage exists.

14  *McDonald v. State Farm Fire & Cas.,* 119 Wn.2d 724, 727 (1992).  First, the insured must

15  demonstrate that "the loss falls within the scope of the policy's insured losses." *Id.*  To avoid

16  coverage, the insurer must then show that the loss is excluded by specific policy language.  *Id.* at

17  728.  In Washington, the duty to defend is broader than the duty to indemnify.  *Hayden v. Mutual*

18  *of Enumclaw Ins.,* 141 Wn.2d 55 (2000).  A duty to defend exists where the complaint against

19  the insured, construed liberally, alleges facts which could impose liability upon the insured

20  within the policy's coverage. *Truck Ins. Exch. v. VanPort Homes*, 147 Wn.2d 751 (2002).  The

21  duty to defend is not, however, limitless.  *E-Z Loader v. Travelers Ins.,* 106 Wn.2d 901, 910

22  (1986) ("We decline to impose on an insurer coverage of a liability not set forth in the policy.").

23  A claim that is clearly outside of the policy's coverage relieves the duty to defend. *Woo v.*

24

1    *Fireman's Fund Ins. Co.*, 161 Wn.2d 43, 53 (2007). The duty to indemnify, unlike the duty to

2    defend, turns on whether the facts of the underlying matter are actually covered. *American Best*

3    *Foods v. Alea London*, 168 Wn.2d 398 (2010).

4         Despite the breadth of an insurer's duty to defend or indemnify, Pemberton's underlying

5    complaint against the Nietos does not state a loss that would fall within the scope of the policy

6    and activate these duties. The Nietos' actions do not constitute an "occurrence" as defined by the

7    policy, which refers to an "an accident, including continuous or repeated exposure to substantially

8    the same general harmful conditions during the term of the policy." Under Washington law,

9    an "accident is never present when a deliberate act is performed, unless some additional,

10   unexpected and unforeseen happening occurs which produces or brings about the result of injury

11   or death." *Detweiler v. J.C. Penney Cas. Ins. Co.*, 110 Wn.2d 99, 106 (1988).

12        Starting a fight, or joining a fight, and biting another's nose are all deliberate acts, and no

13   unforeseen event rendered them accidental. Pemberton's complaint strategically couches the

14   Nietos' actions in "negligence" terms, but that word choice cannot conceal the intentionality of

15   their acts. The policy unambiguously excludes intentional actions from coverage. Even if the

16   specific act of biting off Pemberton's nose was unintentional, causing some bodily injury is a

17   "reasonably expected" consequence —and often the actual objective —of starting or joining a

18   fight. For this additional reason, Pemberton's allegations against the Nietos did not trigger

19   MetLife's duty to defend or indemnify, as a matter of law.

20        The policy also explicitly excludes coverage for criminal acts. Pemberton's underlying

21   complaint alleges assault against both Nietos, an unequivocally criminal act. There is no dispute

22   that Ms. Nieto started the fight. Indeed, Mr. Nieto was convicted of third degree assault for the

23   injury he inflicted upon Pemberton. Pemberton, BBP II, and Nelson claim that the loss

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 6

1    nevertheless falls within the scope of the policy because it covers "bodily injury or property

2    damage resulting from the use of reasonable force by you to protect persons or property."

3    Kenneth Nieto's criminal jury was instructed that the "use of force to protect oneself or another

4    is a defense to assault."  His conviction, then, necessarily includes a binding finding that he was

5    *not* using reasonable protective force. Pemberton has submitted no evidence to show that Ms.

6    Nieto started the fight in response to a threat of force, so she is also not entitled to this exception.

7          Finally, BBP II and Nelson oppose MetLife's Motion by arguing that there is some

8    potential that the Nietos' intoxication may have eliminated their ability to form intent, thus

9    making their tortious conduct something less than intentional, and not excluded under the policy.

10          Washington law permits intoxication as a defense to "intent" only where it has

11    "destroyed a person's mental capacity to form the requisite intent to do the act." *U.S.F. & G Ins.*

12    *Co. v. Brannan*, 22 Wash. App. 341, 348 (1979).   Mr. Nieto himself testified that he was sober,

13    and there is no evidence to demonstrate that Ms. Nieto's intoxication reached the point of

14    destruction of mental capacity. The policy also excludes coverage for the insured's intentional

15    acts even if they lack the mental capacity to govern their conduct. Therefore, intoxication is no

16    defense to the Nietos' intentional acts as a matter of law.

17           In sum, none of the Defendants have met their burden of demonstrating any disputes of

18    material fact. The MetLife homeowner's insurance policy unambiguously excludes intentional

19    and criminal acts from coverage. Clever semantics cannot transform the Nietos' intentional acts

20    into negligent ones. MetLife had (and has) no duty to defend or indemnify because the losses are

21    excluded from coverage under the policy as a matter of law.

22

23

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 7

1      For these reasons, MetLife's Motion for Summary Judgment is **GRANTED**.

2      IT IS SO ORDERED.

3

4      Dated this 2nd day of July, 2014.

5

6      _____

7      RONALD B. LEIGHTON
       UNITED STATES DISTRICT JUDGE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT - 8